IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CURTIS AL'SHAHID,**

    **Plaintiff,**

                                Civil Action 2:18-cv-00033
                                Judge Michael H. Watson
    v.                           Chief Magistrate Judge Elizabeth P. Deavers

**STUART HUDSON,** *et al.***,**

    **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, Curtis Al'Shahid, a state inmate who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983 against Defendants Stuart Hudson, the Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"), and Trayce Thalheimer, the Chairperson of the Ohio Board Authority. This matter is before the Court upon consideration of Defendants' Motion to Dismiss (ECF No. 16), Plaintiff's Response in Opposition (ECF No. 21), Defendants' Reply in Support (ECF No. 22), and Plaintiff's Motion to Strike Defendants' Reply (ECF No. 23). For the following reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 16) be **GRANTED IN PART** and **DENIED IN PART**. Furthermore, Plaintiff's Motion to Strike Defendants' Reply (ECF No. 23) is **DENIED**.

## PROCEDURAL HISTORY

At the outset of this action, Plaintiff requested leave to proceed *in forma pauperis*. (ECF No. 1.) The Court granted Plaintiff's Motion for Leave to Proceed *in forma pauperis* on April 4, 2018. (ECF No. 5.) On the same date, the Undersigned performed an initial screen and

recommended that the Court dismiss Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff filed an Amended Complaint on April 5, 2018 (ECF No. 7) and an Objection to the Report and Recommendation on April 16, 2018 (ECF No. 8). On November 20, 2018, upon review of the Amended Complaint and Plaintiff's Objection, the Undersigned withdrew the Report and Recommendation and permitted Plaintiff to proceed with his claims against Defendants regarding alleged procedural deficiencies in his parole proceedings. (ECF No. 10.)

On December 26, 2018, Defendants filed a Motion to Dismiss. (ECF No. 16.) On January 10, 2019, Plaintiff filed a Response in Opposition to Defendants' Motion. (ECF No. 21.) Defendants filed a Reply in support of their Motion on January 17, 2019. (ECF No. 22.) On January 24, 2019, Plaintiff filed a Motion to Strike Defendants' Reply. (ECF No. 23.) As an initial matter, the Undersigned takes up the Motion to Strike.

## MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Notably, "[t]he striking of a portion of a pleading is a drastic remedy which is seldom granted absent a showing of real prejudice to the moving party." *Hughes v. Lavender*, No. 2:10-CV-674, 2011 WL 2945843, at *2 (S.D. Ohio July 20, 2011) (citing *Armstrong v. Snyder*, 103 F.R.D. 96, 100 (E.D. Wis. 1984)).

Plaintiff moves to strike Defendants' Reply on the grounds that "[t]he allegations are unrelated to Plaintiff's 'Legal Claims' that [were] raised in his Amended Complaint." (ECF No. 23, at pg. 1.) Specifically, Plaintiff asserts that "[t]he 'Due Process' claim raised by Defendants by and through counsel for the first time is not only inaccurate [and] misleading but contrary to [Plaintiff's] due process claim raised [in an earlier filing]." (*Id.*) Plaintiff fails in his Motion to

demonstrate why the drastic remedy of striking Defendants' Reply is warranted.  Plaintiff first argues that "the due process claim has already been raised by the Plaintiff, presented, reviewed and ruled on by this court."  (*Id.* at pg. 3.)

Plaintiff cites to his Objection to the Report and Recommendation recommending that the Court dismiss Plaintiff's claims upon an initial screen pursuant to 28 U.S.C. § 1915(e)(2) (ECF No. 8), and the Court's Order withdrawing the Report and Recommendation and permitting Plaintiff's claims to proceed (ECF No. 10).  Although the Court withdrew the Report and Recommendation and permitted Plaintiff to proceed, it did not analyze or otherwise rule on the merits of Plaintiff's due process claims, as Plaintiff appears to assert.  Rather, the Court's Order withdrawing the Report and Recommendation permitted Plaintiff to proceed with his claims against Defendants regarding alleged procedural deficiencies in his parole hearings.  (*Id.*)  The Court's Order does not prohibit Defendants from making arguments regarding Plaintiff's due process claims.  Nor does it prohibit Defendants from making Eleventh Amendment arguments, as Plaintiff also appears to suggest.  Accordingly, Plaintiff's Motion to Strike (ECF No. 23) is **DENIED**.

## MOTION TO DISMISS STANDARD OF REVIEW

Defendants bring their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted.  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and*

factual demands on the authors of complaints." *16630 Southfield Ltd., P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts

4

intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## MOTION TO DISMISS ANALYSIS

### A. *Habeas Corpus* Petition and Failure to State a Claim Under § 1983

In Defendants' Motion to Dismiss, they argue that because Plaintiff's initial Complaint requested "immediate release" from prison, it should have been filed as a *habeas corpus* petition rather than a 42 U.S.C. § 1983 action. (ECF No. 16, at pg. 7.) As Plaintiff points out, however, in his Amended Complaint he omits the request for "immediate release." (ECF No. 21, at pg. 3.) "Generally, amended pleadings supersede original pleadings." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014). Defendants accept this clarification in their Reply but assert that "this still does not solve the issue of Plaintiff's remaining requests for relief." (ECF No. 22, at pg. 2.)

Specifically, Defendants argue that Plaintiff's request for $80,000 in compensatory damages, which Plaintiff alleges is "based upon 'evil intent' prolonging and deliberately denying [Plaintiff] a meaningful parole board hearing as mandated by House Bill 86, [§] 10" is not an appropriate request for relief in a § 1983 action because "House Bill 86 does not confer any protected liberty interests upon Plaintiff that he could vindicate with a § 1983 action." (*Id.*)

5

However, in a similar case from 2015, this Court held that incorrect information reported to the Ohio General Assembly regarding House Bill 86, when viewed in the light most favorable to a plaintiff, could deprive a plaintiff of his or her Fourteenth Amendment . . . Due Process right to a correct parole record[.]" *Kinney v. Mohr*, No. 2:13-cv-1229, 2015 WL 1197812, at *5 (S.D. Ohio March 16, 2015). The similarity of *Kinney* to the instant action bears a recounting of *Kinney*'s background and the Court's holding.

> Plaintiff Jack W. Kinney . . . alleges Defendants violated his Fourteenth Amendment rights when they denied him a meaningful statutorily-based parole eligibility hearing. He has brought a claim under 42 U.S.C. § 1983, which guarantees that "every person who, under color of any statute . . . of any state subjects . . . , or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (2006). This matter is before the Court on [Defendants'] Motion to Dismiss.
>
> The complaint alleges that Defendants willfully denied Plaintiff a meaningful, statutorily-based parole eligibility hearing for inmates aged sixty-five and older, as required by House Bill 86 § 10. Plaintiff alleges that Defendants knowingly sent false and biased information to the legislature in a report explaining why Plaintiff was not suitable for parole review under House Bill 86 § 10. This report is hereinafter referred to as "HB 86 Report."
>
> In 2011, the Ohio legislature passed Section 10 of House Bill 86, a law affecting any parole-eligible inmates 65 years and older. *See* 2011 H 86, § 10, eff. 9-30-11. Section 10 of House Bill 86 states that "the Department of Rehabilitation and Correction ["DRC"] shall *thoroughly review* the cases of all parole-eligible inmates who are sixty-five years of age or older and who have had a statutory parole consideration hearing." 2011 H 86, § 10, eff. 9-30-11 (emphasis added). Upon completion of this review, the DRC is required to send a report to the Ohio General Assembly summarizing the findings of its review and explaining why each of those inmates has not been paroled or otherwise released from custody. *See* [*i*]*d.* In addition, the Chair of the Parole Board is required to present to the Board the cases of these inmates. *Id.* Upon presentation of the case of an inmate, "the Board, by majority vote, *may* choose to rehear the inmate's case for possible release on parole." *Id.* (emphasis added).
>
> . . .
>
> The complaint alleges that the following information in the HB 86 Report was incorrect, that Defendants knew the information was false, and, yet, they refused to

6

remove or correct the information that was sent to state legislators. Defendants do not contest Plaintiff's assertion that on April 14, 2010, The Ohio Adult Parole Authority ("OAPA") sent false and biased information to the Ohio Attorney General in Plaintiff's HB 86 Report. The Report falsely stated that Plaintiff was denied release in his 2007 parole board hearing because Plaintiff raped, sodomized and shot a female victim. Also, the Report falsely stated the Plaintiff premeditated killing three victims. In addition, the Report falsely stated the Plaintiff shot all victims in the head. The autopsy report and transcript of interrogation support Plaintiff's contention that the three victims were not shot in the head execution-style as suggested by the HB 86 Report.

Defendants argue that Plaintiff's claim should be dismissed for failure to state a claim. Additionally, Defendants state that Plaintiff has no due process right to a parole hearing and therefore no right to an accurate parole record. In their objection [to the Report & Recommendation which recommended denial of their Motion to Dismiss], Defendants recognize that *Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.* found that an inmate could have a due process claim where parole is denied based on false information in the parole file, but Defendants argue that this is not such a case. *See* 492 F. App'x 567, 571 n.5 (6th Cir. 2012). Defendants urge this Court to find *Jergens* distinguishable from this case because in *Jergens* the false information was provided to the Parole Board, and in this case Defendant DRC provided the false information to the Ohio General Assembly. In addition, Defendants advocate that House Bill 86 only suggests that the Parole Board *may* choose to re-hear inmate cases; from this, Defendants conclude that there is no obligation for the Parole Board to consider any inmate for parole and no attendant due process right for Plaintiff. In sum, Defendants advocate that House Bill 86 does not mandate the Parole Board to consider inmates for parole release, and they find the legislation's use of the word "may" does not create an obligation to rehear any of the inmates' cases.

Plaintiff argues that information was intentionally fabricated in order to mislead the Ohio General Assembly and justify denying him meaningful parole consideration. Plaintiff asserts that Defendants were required to review all cases of inmates falling within the dictates of HB 86 § 10 (65 years of age or older and had statutory first parole consideration hearing), and when false information is used in the review, it is arbitrary and unreasonable to refuse to correct that information when brought to their attention.

. . .

In order to prevail on a § 1983 claim for violation of procedural due process under the Fourteenth Amendment, a claimant must show that the state deprived him of a constitutionally protected interest in life, liberty, or property without due process of law. *See Sinermon v. Burch*, 494 U.S. 113 (1990). A two-step inquiry is required in the procedural due process analysis. The court must determine: (1) whether

there is a protected liberty or property interest; and, (2) if so, what procedures are required. *Mathews v. Eldridge*, 424 U.S. 219 (1976).

Under the Fourteenth Amendment, the state may not interfere with a constitutional liberty or property interest without due process of law. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Since Ohio has a discretionary parole system, there is no attendant due process right in the grant of parole, and the state's statutory and regulatory guidelines for parole, without more, do not change this calculus. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7–12 (1979) (There is no constitutional right to be paroled before the expiration of a valid sentence. If a state adopts a parole system, the existence of a liberty interest in parole release is entirely dependent on state law.); *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 464–65 (1989) (If a state statute vests complete discretion to the parole board to determine eligibility for parole, no liberty interest exists.); *Michael v. Ghee*, 498 F.3d 372, 378 (6th Cir. 2007); *see also Jergens v. State Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 F. App'x 567, 570 (6th Cir. 2012) (Ohio has a discretionary parole system, so an Ohio inmate has no liberty interest in parole.)[]

While it is indisputable that an inmate has no liberty interest in parole insofar as the state parole system is entirely discretionary, the Ohio Supreme Court has held that inmates do have a right to accurate parole records, requiring that parole decisions not be made in reliance on information that the Parole Board knows to be inaccurate or has reason to know is inaccurate. *See State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St. 3d 375, 380 (2014) (The discretion given to the parole board "must yield to statutory or regulatory requirements. Therefore . . . in any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate."). Thus, in essence, the Ohio Supreme Court has determined that the Adult Parole Authority does not have complete discretion because it does not have discretion to rely upon falsified parole records, or refuse to investigate an inmate's allegations of substantive errors in the parole record. Accordingly, this Court finds that knowing reliance on false information in a parolee's file, which the Parole Authority has no discretion to do under state law, can constitute a due process violation. *See id.*; *see also* R.C. § 2967.03.

The Sixth Circuit case *Jergens v. State of Dep't of Rehab. & Corr. Adult Parole Auth.* supports this holding. 492 F. App'x 567, 570 (6th Cir. 2012). In *Jergens*, the Sixth Circuit found that while the existence of state-mandated procedural requirements in a parole board's review of a parolee's file does not, in and of itself, create a protected liberty interest, "[n]either this decision nor any binding circuit precedent, however, forecloses the possibility that, in an appropriate case, a parole board's reliance on unconstitutional factors—or even *on false information in the parole file*—could constitute a due-process violation"). *Jergens*, 492 F. App'x 567, 571 at n.5 (emphasis added). Unlike the defendant in *Jergens*, who cited to nonspecific errors in his parole file, Kinney states specific allegations of fact—

verifiable errors brought to the attention of the Parole Board which were not corrected. *See id.* ("Jergens's nonspecific allegations of falsity simply fail to make out such a claim."). Therefore, Plaintiff's case is precisely the "appropriate case" presupposed under *Jergens* where a parole board's "false information in the parole file" could "constitute a due-process violation."

*Jergens* is not the first time the Sixth Circuit left the door open for procedural due process claims where there are inaccuracies in a parole record, or reason to believe inaccuracies exist. In *Crouse v. Rothgerber*, an inmate was denied parole based on an inaccurate parole file. 791 F.2d 932 (6th Cir. 1986). However, the inaccuracies were brought to the attention of the parole board, and they properly reevaluated the inmate's case based on the corrected information. *Id.* The Court, therefore, assumed that any procedural rights that may have been denied were vindicated when the inmate received adequate reconsideration "of the Board's error to satisfy due process." *Id.* "In short, it appears that the Kentucky authorities adequately remedied any assumed deprivation of procedural due process," by reevaluating his case. *Id.*

Defendants also argue that the Plaintiff's case is not the type of case contemplated by the Sixth Circuit in *Jergens* because Plaintiff does not allege that the Parole Board relied on false information; instead, he alleges that the Defendant [DRC] provided false information to the Ohio General Assembly. This is a distinction without a difference. The information in the HB 86 Report provided to the General Assembly explains the reasons why Plaintiff was denied parole, and it contains objectively inaccurate information. For example, it is easily gleaned from looking at objective evidence in the record, such as the autopsy report, that the three victims were not shot in the head as stated in the HB 86 Report.

Viewing the facts in the light most favorable to the Plaintiff, Defendants knew the information in Plaintiff's HB 86 Report was incorrect, and/or had a mechanism to verify the alleged inaccuracies, and failed to investigate the inaccuracies and/or correct them. Under *Keith v. Ohio*, the Parole Authority did not have discretion to rely upon falsified parole records. Thus, viewing the facts in the light most favorable to the Plaintiff, he was deprived of his Fourteenth Amendment . . . Due Process right to a correct parole record as contemplated in footnote 5 of *Jergens*.

(*Id.* at *1–5) (citations to the docket omitted).

Here, Plaintiff alleges in his Amended Complaint that the Defendants "willfully and knowingly altered the facts, and changed the description of Plaintiff's conviction . . . and fabricated 'facts' or the nature of the crime in order to send a false report to the Ohio General Assembly as was required pursuant to [§] 10, House Bill 86, effect 9-30-2011." (ECF No. 7, at

9

pg. 2–3.) Specifically, Plaintiff alleges that he was never convicted of the crime described in the Ohio Parole Board Information Sheet. (ECF No. 7–1.) Plaintiff attaches his indictment and verdict information as support for his allegation. (*Id.*) *Kinney* is analogous here because plaintiff Kinney "state[d] specific allegations of fact—verifiable errors brought to the attention of the Parole Board which were not correct." 2015 WL 1197812, at *4. Like Kinney, Plaintiff's sets out specific errors and alleges that the Parole Board was made aware of the errors at Plaintiff's second parole board hearing on March 17, 2017 and in a letter. (ECF No. 7, at pg. 3.) Taking these facts as true and in the light most favorable to the Plaintiff, Defendants knew the information in Plaintiff's parole report was incorrect and had a mechanism to verify the alleged inaccuracies. Nevertheless, according to Plaintiff, Defendants failed to investigate the inaccuracies or correct them. Accordingly, the Undersigned recommends that Defendants' Motion to Dismiss be denied as moot on *habeas corpus* grounds and that Defendants' Motion to Dismiss be denied as to their assertion that Plaintiff has failed to state a claim under § 1983.

### B. Eleventh Amendment Immunity

Defendants argue that Plaintiff's official capacity claims against Defendants are barred by the Eleventh Amendment. (ECF No. 16, at pg. 9–10.) A claim asserted against a state actor in his or her official capacity is really a claim against the state. *Rothhaupt v. Maiden*, 144 F. App'x 465, 471 (6th Cir. 2005) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. An official-capacity claim is not a claim against the official personally, for the real party in interest is the entity.") (internal quotation marks and citations omitted). The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "It is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, No. 10-2185, 2013 WL 3455488, at *3 (6th Cir. July 10, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

Accordingly, to the extent that Plaintiff seeks to assert claims for compensatory damages against Defendants in their official capacities, these claims necessarily fail as barred by the Eleventh Amendment. However, the Eleventh Amendment does not bar a plaintiff's claims against defendants in their official capacity for injunctive relief or in their individual capacities. *Prim v. Jackson*, No. 2:14-cv-1219, No. 2:14-cv-2159, 2015 WL 3544668, at *8 (S.D. Ohio June 4, 2015) (citing *Lawson v. Shelby Cnty., TN*, 211 F.3d 331, 335 (6th Cir. 2002)). The Undersigned, therefore, recommends that Defendants' Motion to Dismiss be granted with respect to any compensatory damages sought by Plaintiff against Defendants in their official capacities.

## C. *Respondeat Superior*

Defendants argue that Plaintiff's claims must be dismissed because they fall under the doctrine of *respondeat superior*. (ECF No. 16, at pg. 10–12.) In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). Plaintiff must allege personal involvement because "§

1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

Defendants argue that Plaintiff's allegations rely solely on Defendants supervisory positions. (ECF No. 16, at pg. 11.) "[S]upervisory personnel are not liable under the doctrine of *respondeat superior*; rather, [a] plaintiff must allege that a supervisor condoned, encouraged, or knowingly acquiesced in the alleged misconduct." *White v. County of Wayne*, 20 F. App'x 450, 451 (6th Cir. 2001) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995) (italics added). Plaintiff makes the following allegations in his Amended Complaint regarding Defendant Hudson (previously Defendant Mohr) and Defendant Thalheimer (previously Defendant Imbrogno):

> Plaintiff Al'Shahid alleges that the parole board decision was made in reliance of false information, which was the responsibility of the Chairperson to investigate and correct. The Defendant was informed of this incorrect and falsified information at [Plaintiff's] second parole board hearing [on] March 17, 2017, and in a letter. . . . (ECF No. 7, at pg. 3.)
>
> Plaintiff Al'Shahid alleges, that the Defendants in this case not only fabricated the events of the nature of the offense, but switched the "Not Guilty" verdict to the Guilty verdict of aggravated Burglary and robbery which Plaintiff Al'Shahid was convicted. This is why it is alleged that the Defendants knowingly and intentionally caused the injury in denying Plaintiff Al'Shahid, a meaningful parole board hearing and release. (ECF No. 7, at pg. 4.)

(*See generally* ECF No. 7.) When indulging all reasonable inferences in favor of Plaintiff and taking these well-pleaded facts as true, Plaintiff's Amended Complaint establishes that Defendants at least implicitly authorized, approved, or knowingly acquiesced in providing the incorrect/falsified information to the Ohio General Assembly. *See Love v. Franklin Cnty., Kentucky*, No. 3:18-cv-00023, 2019 WL 1387692, at *6 (E.D. Ky. March 27, 2019) (establishing

12

that because defendant saw prisoner was in labor and chose not to intervene, the plaintiff had established defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."). Specifically, Plaintiff alleges that "Defendant"[1] was informed of the allegedly incorrect/falsified information on two occasions, and that both Defendants "fabricated the events of the nature of the offense" and "switched the 'Not Guilty' verdict to the Guilty verdict[.]" Accordingly, under the limited circumstances of the particular case, the Undersigned recommends that Defendants' Motion to Dismiss be denied on *respondeat superior* grounds.

   **D. Standing**

Defendants argue that Plaintiff fails to establish standing because he has not demonstrated how any of the Defendants caused the alleged harm. (ECF No. 7, at pg. 12–13.) To satisfy Article II's standing requirements, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Foster-Bey v. Rubitschun*, No. 05-71318, 2005 WL 2010181, at *4 (E.D. Mich. Aug. 18, 2005) (citing *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 180–81 (2000)).

Defendants argue that because Plaintiff has not pled how each Defendant is personally responsible for the alleged harm, his Complaint must be dismissed for a lack of standing. The

---

[1] It is not clear from Plaintiff's Amended Complaint whether he is attempting to refer to both Defendants, or whether he is specifically referring to one Defendant. The Court construes this language to implicate Defendant Thalheimer because the previous sentence discusses the responsibility of the "Chairperson," who is Defendant Thalheimer. (*See* ECF No. 7, at pg. 3.) Because the Court must construe *pro se* Plaintiff's pleading liberally, the Court will not make a determination as to whether Plaintiff is referring to one or both Defendants in this instance.

13

Parole Board, however, retains complete discretion whether to grant or deny parole. Defendants argument "does not take into account that a dilution of procedural safeguards, in and of itself, is an injury." *Id.* Furthermore, "[s]tanding is a threshold determination." *Id.* Therefore, "[u]nlike proving the merits of the case . . . a plaintiff cannot be required to provide evidence of his injury at this initial stage; it is sufficient for him to state his injury so that the court may determine whether, assuming those facts do exist, it is cognizable." *Id.* Here, based on the allegations in Plaintiff's Complaint, Defendants caused Plaintiff harm which is capable of being redressed by the Court. Accordingly, the Undersigned recommends denying the Motion to Dismiss on the grounds that Plaintiff lacks standing.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Strike (ECF No. 23) is **DENIED**. Additionally, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (ECF No. 16) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** with respect to any compensatory claims Plaintiff seeks against Defendants in their official capacities. The Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED** with respect to *habeas corpus*, failure to state a claim under § 1983, and standing.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: June 21, 2019                    /s/ *Elizabeth A. Preston Deavers*
                                       **ELIZABETH A. PRESTON DEAVERS**
                                       **CHIEF UNITED STATES MAGISTRATE JUDGE**