**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CURTIS AL' SHAHID,**

     **Plaintiff,**

                                **Civil Action 2:18-cv-00033**
                                **Judge Michael H. Watson**
     **v.**                           **Magistrate Judge Elizabeth P. Deavers**

**GARY C. MOHR,** *et al.***,**

     **Defendants.**

## <u>ORDER and</u>

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Curtis Al' Shahid, who is incarcerated at the Pickaway Correctional Institute and proceeding without counsel, brings this civil rights action under 42 U.S.C. § 1983 against Stuart Hudson ("Defendant Hudson"), the Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"), and Trayce Thalheimer ("Defendant Thalheimer"), Chairperson of the Ohio Parole Board Authority ("OPBA") alleging that they violated his Fourteenth Amendment Due Process rights by purposefully falsifying information presented to the Ohio parole board in connection with his  parole hearings.  (ECF No. 1–6, 7.)  Plaintiff names the Defendants in their official and individual capacities and he seeks prospective injunctive relief and money damages. (*Id*.)  This matter is before the Court for consideration of Defendants' Motion for Summary Judgment (ECF No. 77), which has been fully briefed and is ripe for review (ECF Nos. 78, 83). Also before the Court is Plaintiff's Motion to file a Sur-Reply.  (ECF No. 84.)  For the reasons that follow, Plaintiff's Motion for Leave to File a Sur-Reply is **DENIED**.  The Undersigned further **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**.

I.      **Procedural History**

Plaintiff initiated this action on January 12, 2018.  (ECF No 1.)  In his Complaint, he

named as Defendants the former Director of the ODRC, Gary Mohr, and the Former Chairperson

of the OPBA, Andre Imbrogno.  (ECF No. 1–1.)  The Undersigned initially recommended that

Plaintiff's Complaint be dismissed pursuant to 28 U.S.C. § 1915(e), but subsequently withdrew

that Report and Recommendation after reviewing Plaintiff's Objections and Amended

Complaint.  (ECF Nos. 5, 1–6, 7, 8, 10).  On December 7, 2018, Defendants Hudson and

Thalheimer were substituted as Defendants for Plaintiff's official capacity claims pursuant to

Federal Rule of Civil Procedure 25(d) governing the automatic substitution of a public officer's

successor when an officer ceases to occupy an office while a suit is pending.  (ECF No. 13.)

On June 21, 2019, the Undersigned recommended that the Court grant Defendants'

Motion to Dismiss Plaintiff's claims for money damages against them in their official capacities

but otherwise deny Defendants' motion.  (ECF No. 24.)  That recommendation was adopted on

August 7, 2019.  (ECF No. 31.)  Plaintiff moved for summary judgment before the close of

discovery.  (ECF No. 27.)  On January 29, 2020, the Undersigned recommended that Plaintiff's

Motion for Summary Judgment be denied.  (ECF No. 50.)  The Court adopted that

recommendation on February 21, 2020.  (ECF No. 51.)

On October 30, 2020, Defendants moved for Summary Judgment on Plaintiff's claims for

injunctive relief.  (ECF No. 77.)  Defendants assert that these claims are completely barred by

the Eleventh Amendment, have been mooted in part, and with regard to the ones that have not

been mooted, Plaintiff is not entitled to the injunctive relief he seeks.  (*Id*.)  Defendants also

move for summary judgment on Plaintiff's claims against them in their individual capacities for money damages because they are entitled to qualified immunity from those claims.  (*Id*.)

## II.    Factual Background

In July of 1977, while serving on parole, Plaintiff was indicted in Ohio state court.  (Al' Shahid Dep. Ex. 1, ECF No.76–2, at PageID 733–34.)[1]  That indictment included two counts related to the July 13, 1977, robbery of Margaret Werner and two counts related to the July 15, 1977, robbery of Susan Turner at the household where Ms. Turner's mother and father, Robert Turner, lived.  (*Id*.)  During the robbery of Susan Turner, Plaintiff forced his way into the Turner home and held a knife to Susan Turner's throat.  (Al' Shahid Dep. at PageID 643.)  Once inside, Plaintiff ordered Susan Turner and her mother to lie on the floor while he took bonds, jewelry, and other items from the Turner home.  (*Id*.)  Plaintiff also gagged and bound the mother with her husband's neck ties.  (*Id*. at PageID 643–44.)  A few days later, Plaintiff presented the bonds to a bank, but the teller, recognizing that the bonds were stolen, alerted police.  (*Id*. at PageID 644.)

On December 21, 1977, Plaintiff's parole was revoked.  (Al' Shahid Dep. Ex. 2, ECF No. 76–2, at PageID 735–36.)  On April 13, 1978, an Ohio jury acquitted Plaintiff of the charges related to the Werner robbery but found Plaintiff guilty of aggravated robbery of Susan Turner and aggravated burglary of the Turner household.  (Al' Shahid Dep. Ex. 1, ECF No.76–2, at PageID 732.)  The state court imposed a sentence of seven to 25 years to run consecutively for an aggregated term of 14 to 50 years.  (Al' Shahid Dep. Ex 2, ECF No.76–2, at PageID 735–36.)  Plaintiff's sentence was also ordered to run consecutive to any other sentences including

---

[1] Two counts were dropped.  (Al' Shahid Dep., at PageID 596.)

violating parole.  (*Id*.)  After calculating jail-time credits, Plaintiff's maximum term was set to expire on December 1, 2066.  (*Id*.)  Plaintiff was paroled, however, on December 16, 1988.  (*Id*.)

In 1990, and while still on parole, Plaintiff was convicted in Ohio state court of five counts of aggravated robbery and three counts of robbery.  (*Id*.)  The trial court imposed ten to 25 years on each of the aggravated robbery convictions and ten to 15 years on each of the robbery convictions to run concurrent to each other but consecutive to any parole violation, plus three years for a firearm specification which was to run consecutively to all other sentences including any parole violations.  (*Id*.)  Even with jail-time credit, Plaintiff's maximum term was not set to expire April 11, 2093.  (*Id*.)  Plaintiff was paroled, however, on December 7, 2004. (*Id*.)

In July of 2005, while on parole, Plaintiff was indicted for three counts of burglary in Ohio state court.  (*Id*. at PageID 736, 747–49.)  Plaintiff's parole was revoked.  (Al' Shahid Dep. Ex 2, ECF No.76–2, at PageID 736.)  Plaintiff was apparently convicted, and on December 28, 2005, sentenced to serve three years for each count to run consecutive to each other but concurrent to his sentence for his parole violation.  (*Id*.)  At a resentencing following an appeal, the trial court re-imposed that sentence.  (*Id*.)  With jail-time and earned credit, Plaintiff's stated term expired on June 27, 2014, but his maximum expiration of sentence is not set to expire until March 28, 2093.  (*Id*.)  Plaintiff has not been paroled since that sentence was imposed.  (*Id*.)

At deposition, Plaintiff testified that since his last sentencing, he has "went to the parole board three times" on "May 1, 2014, March 17, 2017, and December 13, 2017."  (Al' Shahid Dep., at PageID 578.)  Plaintiff further testified that during his March 17, 2017, parole hearing, he was asked why he had been so brutal and violent during a robbery that he committed on July 13, 1977, when a woman was beaten and robbed, and if he had engaged in a pattern of robbing

4

and assaulting women.  (Al' Shahid Dep., at PageID 618.)  Plaintiff explained to the Ohio parole board that he had never been convicted of such a crime in 1977 but was instead convicted at that time for attempting to cash savings bonds stolen from the residence of Robert Turner.  (*Id*. at 618–19.)

On December 13, 2017, Plaintiff was denied parole.  (ECF No. 78, PageID 851.)  The board explained that Plaintiff was not considered suitable for release due to his extensive criminal history, the uncertainty surrounding his release plan, and community opposition communicated to the Board at the full board hearing.  (*Id*.)

On December 26, 2017, Plaintiff wrote a letter to the former Chairperson of the Ohio parole board, Andre Imbrogno.  (Al' Shahid Dep. Ex. 2, ECF No.76–2, at PageID 782.)  In his letter, Plaintiff asserted that during his March 17, 2017, parole board hearing, he had been asked about robbing a woman on July 13, 1977, but that he was actually convicted at that time for attempting to cash savings bonds stolen from Robert Turner's household and that "they had the wrong case file/record."  (*Id*.)  Plaintiff's letter also alleged that he had recently discovered that this information had been purposely altered so that the board could justify its decision not to recommend him for parole in a report it was required to send to the Ohio Legislature pursuant to House Bill 86 § 10, regarding parole decisions for inmates aged 65 and over.  (*Id*.)

Seventeen days later, on January 12, 2018, Plaintiff initiated this action.  (ECF No. 1–1.) He attached to his original Complaint a two-page Ohio Parole Information Sheet completed by Brenda Bonn on April 18, 2014.  (ECF No. 1–2, at PageID 15–16.)[2]  That information sheet contained the following description of the crimes for which Plaintiff was convicted in 1977:

---

[2] Plaintiff attached page one of the same document to his Amended Complaint.  (ECF No. 76–2, at PageID 731.)

> On 7-13-77 at 3:00pm, the inmate appeared at the doorsteps of female victim offering to sell her an afghan. The victim stated she had one and the inmate asked to see it. The inmate then grabbed the victim by the throat, knocked her to the floor and demanded money. The inmate removed her watch, and a wallet from her purse. The inmate fled the residence leaving the victim unconscious. He later tried to cash savings bonds that were reported stolen from the victim's residence.

*Id.*

On March 22, 2018, Plaintiff wrote again to the former Chairperson of the Ohio parole board. (Al' Shahid Dep. Ex. 2, ECF No.76–2, at PageID 786.) Plaintiff once again asserted that he had not been convicted of the crime described in the parole board's files, (i.e., the robbery of Margaret Werner), and that instead he had been convicted of different crimes (i.e., the offenses related to the Turner family.) (*Id.*; Al' Shahid Dep., ECF No. 76–1, at PageID 634, 637–38.) Plaintiff also alleged again that the incorrect information had been deliberately included "in order to show that I am aggressive, and to make it appear that I am violent towards women, also to send a false report to the State General Assembly regarding House Bill 86 § 10." (*Id.*)

The record contains unrefuted evidence that after Plaintiff sent that second letter, the Ohio parole board researched his claims and discovered that the Ohio Parole Board Information Sheet prepared on April 18, 2014, contained incorrect details about the crimes that Plaintiff had committed in 1977. (Response to Interrogatory No. 14, ECF No. 78, at PageID 869.) The record also contains a two-page Ohio Parole Information Sheet prepared by Brittany Parker on May 25, 2018. (ECF No. 76–2, at PageID 789–90.) That document includes the following description of the crimes for which Plaintiff was convicted in 1977:

> In July of 77 the female victim 1 answered the door. The inmate forced his way in and held a knife to the female victim 1's throat. When the female victim 1 screamed her mother (female victim 2) came to her rescue. The inmate made both female victim's (sic) lay on the floor before making them take him through the house where he took bonds, a jewelry box, and other small items. The female victim 2 testified that she had been gagged and bound with her husband's ties by the inmate during the robbery. On 7-20-77 the inmate entered Central Trust Bank where he presented

> savings bonds to the teller. The teller recognized these bonds as stolen and stalled the inmate as she alerted police. Police arrived minutes later and the inmate attempted to run. He was apprehended a few short blocks away.

*Id.* [3]

In addition, the record contains unrefuted evidence that after the error came to light, the Ohio parole board voted on June 1, 2018, to rescind Plaintiff's previous hearing result and conduct a new hearing with the corrected details. (Response to Interrogatory No. 14, ECF No. 78, at PageID 869; Al' Shahid Dep. Ex. 10, ECF No. 76–2, at PageID 793; Al' Shahid Dep. Ex. 9, at Page ID 791–92.) On June 13, 2018, a letter was sent to Plaintiff informing him that the board had voted to rescind and reconsider his case. (Al' Shahid Dep. Ex. 11, ECF No. 76–2, at PageID 794.) On October 23, 2018, a new hearing was conducted but the parole board concluded that Plaintiff was not suitable for release because of his risk was elevated by his prior history of chronic offenses including some violence and his release plan remained underdeveloped. (Al' Shahid Dep. Ex. 15, at PageID 800–01.)

## III.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710

---

[3] At deposition, Plaintiff testified that this description of the robbery and burglary at the Turner residence was an accurate description of the crimes for which he was convicted in 1977. (Al' Shahid Dep., ECF No. 76–1, at PageID 641, 643–44.)

(6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x. 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,' . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x. 435, 441 (6th Cir. 2011) (citations omitted). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## IV.   Analysis

Plaintiff alleges the Defendants violated his Fourteenth Amendment due process rights by knowingly and intentionally altering, changing, and falsifying information presented to the parole board on December 13, 2017, and thereby deprived him of a meaningful parole board hearing. (ECF No. 7.) Plaintiff further alleges that the Defendants violated his due process

rights by knowingly and intentionally altering, changing, and falsifying information presented to the Ohio state legislature.  *Id*.  He names the Defendants in their official capacities and seeks injunctive relief in the form of an Order requiring them to "send a correct report" to the parole board and the Ohio Legislature.  (*Id*. at PageID 73.)  He also names Defendants in their individual capacities and seeks money damages.

    A.    Plaintiff's Official Capacity Claims for Injunctive Relief

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims because they are completely barred by the Eleventh Amendment, have been mooted in part, and with regard to the ones that have not been mooted, Plaintiff is not entitled to the injunctive relief he seeks.

    1.    *Eleventh Amendment Immunity*

The Undersigned concludes that Plaintiff's official capacity claims for injunctive relief are not barred by the Eleventh Amendment.  The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  As originally drafted, the Eleventh Amendment only barred suits brought against a state by out-of-state or foreign citizens.  In 1890, however, the Supreme Court held that in-state as well as out-of-state citizens were barred by the Eleventh Amendment from suing a state.  *Lawson v. Shelby Cty., TN*, 211 F.3d 331, 334–35 (6th Cir. 2000) (citing *Hans v. Louisiana*, 134 U.S. 1, (1890)).  As a result, the Eleventh Amendment now bars federal court jurisdiction whenever any private citizen attempts to sue a state.  (*Id*.)

There are three exceptions, however, to Eleventh Amendment immunity.  First, a state may waive the protection of the Amendment by consenting to the suit.  *Id*. (citing *Thiokol Corp.*

*v. Dep't of Treasury*, 987 F.2d 376 (6th Cir.1993)).  Second, Congress can explicitly abrogate the sovereign immunity of the states by passing statutes passed pursuant to a "valid exercise of power."  *Id.* (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996)).  Third, a federal court may enjoin a "state official" from violating federal law.  *Id.* (citing *Ex Parte Young,* 209 U.S. 123, (1908)).  The Sixth Circuit Court of Appeals has explained that this third exception is made because "a suit against a state officer is not a suit against the state when the remedy sought is an injunction against an illegal action, for an officer is not acting on behalf of the state when he acts illegally."  Indeed, "[i]njunctive relief is available under the *Young* exception only against state officers—not the state itself—who violate federal law".  *Id.* (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)).

In this case, Plaintiff's official capacity claims for injunctive relief fall within the third exception.  Under *Ex Parte Young*, Defendants can be stripped of their "agents of the state" status if they violate federal law.  Plaintiff asserts that Defendants violated his federal due process rights by intentionally falsifying information that was presented to the parole board and to the Ohio state legislature.  He requests prospective injunctive relief—an Order directing Defendants to "send a correct report" to both entities.  His claim thus constitutes the type contemplated by *Ex Parte Young*.

Defendants assert that the *Ex Parte Young* exception does not apply because Plaintiff's claims for prospective injunctive relief are claims against the state even though Plaintiff nominally alleges those claims against them individually in their official capacities.  (ECF No. 77, at PageID 818–19.)  When making this assertion, Defendants cite cases instructing courts to refrain from relying on a litigant's characterizations of claims and to instead determine whether a remedy that is sought is truly against a sovereign.  Defendants also note that the United States

10

Supreme Court has identified three circumstances where states are the "real party in interest" even though an official has been named as a defendant: 1) when a judgment would be paid from the public treasury; 2) when the effect of a judgment would be to restrain or compel the Government to act; or 3) when a "decree" would interfere with the public administration of the law. (*Id.* citing *Pennhurst*, 465 U.S. at 101 & n.11). Defendants further contend that they do not have the power to grant Plaintiff a new parole hearing or to grant or deny him parole, and presumably, the state does. Thus, they reason, Plaintiff's claims for injunctive relief should be construed as ones made against the state. The flaw in Defendants' reasoning, however, is that Plaintiff does not seek an Order requiring that he be given a new parole hearing or that he be granted parole. Instead, he seeks an Order requiring Defendants to send corrected reports to the Ohio parole board and the Ohio legislature. Defendants do not point to any evidence in the record demonstrating that they lack the power to send such reports. Accordingly, the Undersigned is not convinced, on this record, that the state, rather than the individual Defendants, is the real party in interest and that the *Ex Parte Young* exception does not apply.

Defendants also rely on the United States Supreme Court's statement in *Will v. Michigan Dept. of State Police* that state officials in their official capacities are not "persons" under § 1983. (ECF No. 77, at PageID 819; ECF No. 83, at PageID 907) (citing 491 U.S.58, 71.) Defendants' reliance on that case is misplaced. The Sixth Circuit Court of Appeals recently explained that it has "held repeatedly, in reliance on footnote ten in *Will*, that the 'personhood' of official capacity defendants under § 1983 turns on the relief a plaintiff seeks." *Avery v. Benson*, 831 F. App'x. 207, (Mem)–208 (6th Cir. 2020) (citing *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 637 & n.3 (6th Cir. 2005)). And when plaintiffs seek injunctive relief, *Ex Parte Young* allows them to circumvent state

sovereign immunity.  *Id*. (citing *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d

590, 598–99 (6th Cir. 2016)).  The Undersigned therefore concludes that Plaintiff's official

capacity claims for prospective injunctive relief are not barred by the Eleventh Amendment.

　　　　　2.　　*Mootness*

On the other hand, the record establishes that Plaintiff's official capacity claims for

prospective injunctive relief have been mooted in part.  Mootness is described as "'the doctrine

of standing set in a time frame: The requisite personal interest that must exist at the

commencement of the litigation (standing) must continue throughout its existence (mootness).'"

*Gottfried v. Med. Plan. Servs., Inc.*, 280 F.3d 684, 691 (6th Cir. 2002) (quoting *Arizonans for*

*Official English v. Arizona,* 520 U.S. 43, 67, n.22 (1997) (citing *United States Parole Comm'n v.*

*Geraghty,* 445 U.S. 388, 397 (1980) (quoting Monaghan, *Constitutional Adjudication: The Who*

*and When,* 82 Yale L.J. 1363, 1384 (1973))).  "A case is moot when the issues presented are no

longer 'live' *or* the parties lack a legally cognizable interest in the outcome."  *Id*. (citing *County*

*of Los Angeles v. Davis,* 440 U.S. 625, 631 (1978)).  If a case is moot, the Court lacks

jurisdiction to proceed.  *Ramsek v. Beshear*, 989 F.3d 494, 499 (6th Cir. 2021) (citing *Ohio v.*

*EPA*, 969 F.3d 306, 308 (6th Cir. 2020) ("[U]nder Article III, the 'federal courts are without

power to decide questions that cannot affect the rights of litigants in the case before them.'"

(quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974))).

Defendants contend that Plaintiff's official capacity claims for injunctive relief have been

mooted, in part, because a corrected report was already provided to the Ohio parole board and

Plaintiff was granted a new parole hearing.  The Undersigned agrees.

A defendant's voluntary cessation of allegedly illegal conduct does not, as a general rule,

"deprive the tribunal of power to hear and determine [a] case."  *Speech First, Inc. v. Schlissel*,

939 F.3d 756, 767 (6th Cir. 2019) (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)

(quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).  Otherwise, a plaintiff

cannot be sure that a defendant will not "'return to his old ways.'"  *Friends of the Earth v.*

*Laidlaw Evtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v.*

*Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (quoting *United States v. W.T. Grant Co.*,

345 U.S. 629, 632 (1953))).  Instead, voluntary cessation will only moot a case where there is

"no reasonable expectation that the alleged violation will recur," and "interim relief or events

have completely and irrevocably eradicated the effects of the alleged violation."  *Speech First*,

939 F.3d at 767 (quoting *Davis*, 440 U.S. at 631).

When determining whether ceased action cannot reasonably be expected to recur, courts

must consider the "totality of the circumstances surrounding voluntary cessation including the

manner in which the cessation was executed."  *Speech First*, 939 F.3d at 768 (citation omitted).

When considering the totality of those circumstances, courts first note the status of the party

asserting voluntary cessation.  If a private party claims voluntary cessation, the burden of

demonstrating mootness is a heavy one.  *Id*.  If the government claims voluntary cessation,

however, courts evaluate two factors: (1) whether the change happened as a result of enacting or

repealing legislation or by "mere" regulatory action, and (2) whether the government continues

to defend its challenged conduct.  *Id*. at 768, 770.

Under the first factor, if government voluntarily ceases its action by enacting or repealing

legislation, that change will presumptively moot a case in the absence of clear signs that the

change is not genuine.  *Id*. at 768.  Where a change is regulatory, however, the degree of

solicitude afforded the voluntary cessation depends on the manner in which the regulatory

change was accomplished.  *Id*.  If the regulatory change occurred through formal legislative-like

procedures, the government may show that a case has been mooted without "do[ing] much more than simply represent[ing] that it would not return to the challenged policies." *Id.*  Conversely, "[i]f the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*  In addition, courts look at timing when analyzing the process that led to change.  *Ostergren v. Frick*, Case No. 20-1285, — Fed. App'x. — 2021 WL 1307433, at * 4 (6th Cir. April 8, 2021).  "A change enacted in response to litigation 'raises suspicions' that it is not genuine and less likely to last."  *Id.* (quoting *Speech First*, 939 F.3d at 769.)

In this case, the Ohio Parole Board Information Sheet was corrected on May 25, 2018, pursuant to a bureaucratic or regulatory process rather than the enactment or repeal of legislation. (Al' Shahid Dep. Ex. 11, ECF No. 76–2, at PageID 794.)  It also does not appear that the regulatory process could be considered legislative-like.  (*Id.*)  On the other hand, the timing of the correction does not raise suspicions that the correction is not genuine.  Plaintiff sent his first letter complaining that his file contained an error on December 26, 2017.  (Al' Shahid Dep. Ex. 3, ECF No. 76–2, at PageID 782.)  Seventeen days later, he initiated this action.  (ECF No. 1–1.) Plaintiff then wrote a second letter on March 22, 2018.  (Al' Shahid Dep. Ex. 2, ECF No.76–2, at PageID 786.)  By May 25, 2018, a new Ohio Parole Information Sheet had been prepared, and by June 1, 2018, the parole board had voted to rescind Plaintiff's previous hearing results and conduct a new hearing with the corrected information.  (Al' Shahid Dep. Ex. 8, ECF No. 76–2, at PageID 789–90; Response to Interrogatory No. 14, ECF No. 78, at PageID 869; Al' Shahid Dep. Ex. 10, ECF No. 76–2, at PageID 793; Al' Shahid Dep. Ex. 9, at Page ID 791–92.)  Thus, even though the correction happened after this lawsuit was filed, it does not appear that it occurred in

response to this lawsuit, which remained in its infancy in May and June of 2018. Instead, it appears that it happened in response to Plaintiff's letters.

In addition, under the second factor that courts consider when analyzing the government's voluntary cessation, the record does not reflect that there have been attempts defend or justify use of the report that contained erroneous information. Indeed, documents generated after Plaintiff sent his letters clearly indicate that the Ohio Parole Board Information Sheet contained errors and that the board resultantly voted to rescind Plaintiff's prior parole determination. (Al' Shahid Dep. Ex. 10, ECF No. 76–2, at PageID 793; Al' Shahid Dep. Ex. 9, at Page ID 791–92.)

After considering the totality of these circumstances, the Undersigned concludes that the unrefuted record evidence demonstrates that it is not reasonably expected that Defendants will include the erroneous information in Plaintiff's reports to the Ohio parole board again. For that reason, Plaintiff's claims for prospective injunction relief in the form of an Order requiring that the report to the Parole Board be corrected have been mooted.

### 3. *Report to the Ohio Legislature*

Plaintiff also seeks injunctive relief in the form of an Order requiring Defendants to correct information about him that was allegedly included in a report sent to the Ohio Legislature pursuant to House Bill 86 § 10, regarding parole decisions for inmates aged 65 and over. Defendants contend, and the Undersigned agrees, that Plaintiff is not entitled to such relief.

House Bill 86, passed by the Ohio legislature in 2011, contained a number of sentencing reforms. Section 10 of that bill mandated that "[w]ithin ninety days after the effective date of this section, the Department of Rehabilitation and Correction shall thoroughly review the cases of all parole-eligible inmates who are sixty-five years of age or older and who have had a

15

statutory parole consideration hearing." 2011 H 86, § 10, eff. 9–30–11. Section 10 also provided that upon completion of that review, the Department of Rehabilitation was required to send a report to the Ohio General Assembly summarizing its review findings and explaining why each of the inmates who had been reviewed had not been paroled or otherwise released from custody. *See Id.* Section 10 additionally required the Chairperson of the parole board to present reviewed cases to the board and allowed that after the Chair's presentations, the board could, by majority vote, choose to rehear an inmate's case for possible release on parole. *Id.*

Section 10's effective date was September 30, 2011. *Id.* Plaintiff's birthday is August 19, 1947.[4] Thus, he was only 64 years old on September 30, 2011. Because Section 10 mandated a review for those 65 and older on September 30, 2011, Plaintiff's case was not eligible for the review. In addition, although Plaintiff seeks an Order requiring Defendants to correct information about him in the report that was sent to the legislature, the record contains unrefuted evidence that because Plaintiff was not eligible for review on September 30, 2011, no information about him was included in that report. (Al' Shahid Dep. Ex. 5, ECF No. 76–2, at PageID 785.) Thus, the record demonstrates that there is nothing to correct. For these reasons, the Undersigned concludes that Plaintiff is not entitled to this form of injunctive relief.

**B.    Plaintiff's Individual Capacity Claims for Monetary Damages**

Defendants also move for summary judgment on Plaintiff's claims for money damages against them in their individual capacities. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of

---

[4] Ohio Offender Search at:
https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A509692 (last accessed April 15, 2021).

state law." *Burley v. Gagacki,* 729 F.3d 610, 619 (6th Cir. 2013). In their motion for summary judgment, Defendants do not contest that they were acting under color of state law. Instead, they maintain that the record cannot demonstrate that Plaintiff was deprived of any constitutional rights and they raise the defense of qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Courts use a two-prong test to resolve claims of qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). First, a Court must determine if "the facts alleged make out a violation of a constitutional right." *Id.* Second, a Court must determine whether "the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct" constituted a constitutional violation. *Id.* Courts have discretion, however, in deciding which of the two prongs to address first. *Stoudeire v. Mich. Dept. of Corr.* 705 F.3d 560, 567–68 (6th Cir. 2013). In this case, on this record, Plaintiff cannot demonstrate the first prong— that Defendants violated his Constitutional rights.

In order to impose liability under 42 U.S.C. § 1983, a plaintiff must show that a defendant was personally involved in the allegedly unconstitutional conduct. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019) (quoting *Heyne v. Metro. Nashville Pub. Sch.*,

655 F.3d 564 (6th Cir. 2011) ("This Court has consistently held that damages claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.")). Each Defendants' liability must be assessed on an individual basis. *See Jones v. City of Elyria, Ohio*, 947 F.3d 905, 913 (6th Cir. 2020). As the Sixth Circuit has explained, "this principle follows from the Supreme Court's instruction that public officials be held accountable for their own actions, but not the actions of others." *Id*. (citing *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) (citing *Rizzo v.Goode*, 423 U.S. 362, 377 (1976)).

Plaintiff alleges that Defendants violated his Fourteenth Amendment Due Process rights. (ECF No. 7.) At deposition, Plaintiff testified that Defendants "willfully and knowingly altered facts and changed the description of [his] conviction." (Al' Shahid Deposition, 76–1, PageID 557). Specifically, he testified that details about the crime for which he was acquitted (the robbery of Marjorie Werner) were used to describe the crime for which he was convicted (the robbery at the Turner household) and that "they switched it deliberately" or "deliberately changed it" in order make it seem like the robbery at the Turner household was more vicious. (*Id*. at PageID 565–66, 589.) But Plaintiff also testified that he was not sure who had knowingly altered the facts of his convictions and that the person was someone he had not named in his lawsuit. (*Id*. at PageID 654.)

> Q: Why would Mr. Imbrogno [the former Chairman of the OPBA] and Mr. Mohr [the former Director of the ODRC],who did not know you in 1977, why would they do that?
>
> A: It's not them. It's that they were aware. The chairman reviews, after certain information comes to the chair. They are responsible for reviewing any information that may be erroneous or false. The person who I haven't named in my lawsuit, because I didn't know who it was at the time, or the

> facilitator, is the one, or the person – like the document you just gave me, whoever changed this, like Brenda Parker, that's the facilitator who obviously changed this or corrected this.  That person knew.  I mean it's obvious knew that the information that they was putting in my parole file information records knew that the information was incorrect.

(*Id*.)

In this case, Plaintiff alleged in his verified Amended Complaint that the Defendants were the ones who intentionally falsified his information.  At his deposition, however, he testified that an unnamed person "is the one" who "obviously" changed the report.  That evidence does not suffice to hold these named Defendants liable for falsifying the report. At best, Plaintiff perhaps contends that Defendants were responsible as supervisors.  But § 1983 does not permit *respondeat superior* liability.  Instead, a supervisor is only liable when he "encouraged the specific incident of misconduct or in some way directly participated in it."  *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  The record contains no such evidence.  For these reasons, Defendants are entitled to summary judgment on Plaintiff's claims for money damages against them in their individual capacities.

### C. Claims Raised in Plaintiff's Response

In his Response in Opposition to Defendants Motion for Summary Judgment, Plaintiff alleges, for the first time, that Defendants violated his Equal Protection rights and conspired to retaliate against him for filing this action.  (ECF No. 78.)  A plaintiff cannot, however, expand his claims to assert new theories for the first time in response to a summary judgment motion. *Nathan v. Ohio State Univ.*, 984 F. Supp. 2d 789, 810 (S.D. Ohio 2013), *aff'd*, 577 F. App'x. 544 (6th Cir. 2014) (citing *Bridgeport Music, Inc. v. WM Music Corp.,* 508 F.3d 394, 400 (6th Cir. 2007)); *Tucker v. Union of Needletrades, Indus., & Textile Emps.,* 407 F.3d 784, 788 (6th Cir.

2005) (same).

**D.**  **Plaintiff's Motion to File a Sur-Reply**

Plaintiff also moves for leave to file a Sur-Reply.  (ECF No. 84.)  The Court **DENIES**

that motion.  Local Civil Rule 7.2 provides that beyond a motion, a memorandum in opposition,

and a reply, "[n]o additional memoranda . . . will be permitted except upon leave of court for

good cause shown."  S.D. Ohio Civ. R. 7.2(a)(2).  "[T]his Court has consistently held that in

order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds

that were not presented as part of the movant's initial motion."  *Comtide Holdings, LLC v. Booth*

*Creek Mgmt. Corp*., No. 2:07–CV–1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010).

"A surreply is not warranted where the party merely seeks to help the court evaluate the

opposing party's submissions."  *Fla. Keys Elec. Co-op Assoc., Inc. v. Nationwide Life Ins. Co.*,

No. 2:14–cvV372, 2015 WL 5308630, at *2 (S.D. Ohio Oct. 16, 2014).

Here, Plaintiff alleges that Defendants' Reply raises new grounds.  The Court disagrees.

Defendants' Reply addresses new claims raised by Plaintiff in his Memorandum in Opposition.

(ECF No. 83, at PageID 900–06.)  But Defendants' Reply raises no issues that were not already

discussed in their Motion for Summary Judgment.

**V.**  **CONCLUSION**

For all the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion for

Summary Judgment be **GRANTED**.  (ECF No. 77.)  Plaintiff's Motion for Leave to File a Sur-

Reply is **DENIED**.  (ECF No. 84.)

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to this Report, specifically designating this Report, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

**IT IS SO ORDERED.**

**DATE:  April 15, 2021**                    **s/ *Elizabeth A. Preston Deavers***
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**